IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JACOB DOE, et al., | ) | Civ. No. 08-00359 JMS-BMK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER DENYING PLAINTIFFS' |
| vs. | ) | MOTION FOR LEAVE TO |
| | ) | PROCEED ANONYMOUSLY AND |
| KAMEHAMEHA SCHOOLS/ | ) | FOR RELATED PROTECTIVE |
| BERNICE PAUAHI BISHOP | ) | ORDER |
| ESTATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED
ANONYMOUSLY AND FOR RELATED PROTECTIVE ORDER

Before the Court is Plaintiffs' Motion For Leave To Proceed

Anonymously and For Related Protective Order.  The Court heard this Motion on

October 21, 2008.  After careful consideration of the Motion, the supporting and

opposing memoranda, and the arguments of counsel, Plaintiffs' Motion is

DENIED.  Plaintiffs must disclose their identities, but that disclosure is stayed for

ten days from the date this order is filed.

<u>FACTUAL BACKGROUND</u>

Plaintiffs[1] filed this lawsuit to challenge the legality of certain policies and practices implemented by Defendants[2] with respect to admission to campuses that are part of KSBE.  (Complaint ¶ 1.)  Specifically, Plaintiffs challenge Defendants' admissions policy of granting a "preference" on the basis of "Hawaiian ancestry."  (<u>Id.</u>)  Plaintiffs assert this policy "operates to admit students without any Hawaiian ancestry only after all qualified applicants with such ancestry have been admitted."  (<u>Id.</u> ¶ 14.)

Each Plaintiff claims to have applied for admission to a KSBE campus for the 2008-2009 school year without success even though they say they meet "all of the qualifications for admission except for his or her race or ancestry."  (<u>Id.</u> ¶ 7.)  In other words, Plaintiffs allege that, "were they of 'Hawaiian ancestry,' they would have been admitted to a KSBE campus on the basis of their applications for the 2008-09 school year."  (<u>Id.</u> ¶ 16.)

_____

[1] Each Plaintiff is a minor who brings this action by his or her respective parent(s) as next friend(s).  Plaintiffs are (1) Jacob and Janet Doe, by their parents and next friends James and Joyce Doe, (2) Karl Doe, by his parents and next friends Kirk and Kate Doe, and (3) Lisa Doe, by her mother and next friend, Laura Doe.

[2] Defendants are Kamehameha Schools/Bernice Pauahi Bishop Estate ("KSBE") and KSBE Trustees Nainoa Thompson, Diane J. Plotts, Corbett A.K. Kalama, Robert K.U. Kihune, and J. Douglas Ing.

The Complaint prays for, among other things, "a declaration that any of Defendants' current admissions policies or practices that grant a self-described 'preference' on the basis of 'Hawaiian ancestry' violate 42 U.S.C. § 1981 and are therefore illegal and unenforceable." (Id. Prayer For Relief.)  Plaintiffs acknowledge that this Court and the Ninth Circuit previously rejected a "virtually identical claim" in Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 295 F. Supp. 2d 1141 (D. Haw. 2003), aff'd, 470 F.3d 827, 849 (9th Cir. 2006) (en banc) ("Doe 1") ("Because the Schools are a wholly private K-12 educational establishment, whose preferential admissions policy is designed to counteract the significant, current educational deficits of Native Hawaiian children in Hawaii, and because in 1991 Congress clearly intended § 1981 to exist in harmony with its other legislation providing specially for the education of Native Hawaiians, we must conclude that the admissions policy is valid under 42 U.S.C. § 1981.").[3]  By pursuing the present action, Plaintiffs "intend . . . to have that ruling overturned in the Supreme Court of the United States."  (Complaint ¶ 2.)

In early August 2008, Plaintiffs' counsel proposed that the parties enter into a stipulated protective order that would permit Plaintiffs to proceed

_____

[3] After the Ninth Circuit's en banc decision in favor of Defendants, the plaintiff in Doe 1 filed a timely petition for writ of certiorari in the Supreme Court. (Plaintiffs' Ex. 9 ¶ 4.)  While the petition was pending, the plaintiff entered into a settlement agreement with Defendants. (Id. ¶ 5.)

anonymously, as the parties in <u>Doe 1</u> had so stipulated.  (Declaration of Eric Grant

¶ 15.)  Defendants' counsel rejected the proposal.  (<u>Id.</u> ¶ 16.)  As a result, Plaintiffs

brought this Motion, seeking leave to proceed anonymously under the pseudonyms

used in the Complaint.[4]

<u>STANDARD OF REVIEW</u>

Courts have the discretion to grant protective orders pursuant to

Federal Rules of Civil Procedure Rule 26(c), which provides that a party may

move for a protective order and that the court "may, for good cause, issue an order

to protect a party . . . from annoyance, embarrassment, oppression, or undue

burden or expense."  "The Supreme Court has interpreted this language as

conferring 'broad discretion on the trial court to decide when a protective order is

appropriate and what degree of protection is required.'"  <u>Phillips ex rel. Estates of

Byrd v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1211 (9th Cir. 2002).  "For good cause

to exist, the party seeking protection bears the burden of showing specific

prejudice or harm will result if no protective order is granted."  <u>Id.</u> at 1210-11.

---

[4] This Court signed a Stipulated Interim Protective Order Regarding Identities of
Plaintiffs on September 25, 2008, in which Plaintiffs' counsel agreed to disclose Plaintiffs'
identities to one of Defendants' counsel who may in turn disclose that information to certain
individuals.  In an effort to keep Plaintiffs' identities confidential while considering the instant
Motion, the Court also signed stipulated orders allowing the parties to file supplemental papers
relating to this Motion under seal.

<u>DISCUSSION</u>

Federal Rules of Civil Procedure Rule 10(a) commands that the title of every complaint "must name all the parties."  Fed. R. Civ. P. 10(a).  This Rule "protects the public's legitimate interest in knowing all of the facts involved in a case, including the identities of the parties."  <u>Doe v. Beaumont Indep. Sch. Dist.</u>, 172 F.R.D. 215, 216 (E.D. Tex. 1997) ("<u>Beaumont</u>").  "This rule embodies the presumption, firmly rooted in American law, of openness in judicial proceedings," which "harks back to the English common law, where there existed a rule of openness in both criminal trials and civil proceedings."  <u>Doe 1 v. Merten</u>, 219 F.R.D. 387, 390 (E.D. Va. 2004); <u>see</u> <u>Gannett Co. v. DePasquale</u>, 443 U.S. 368, 384 (1979) (noting the "common-law rule of open civil and criminal proceedings").  Additionally, there exists a "clear and strong First Amendment interest in ensuring that 'what transpires in the courtroom is public property.'" <u>Doe v. Stegall</u>, 653 F.2d 180, 185 (5th Cir. 1981) (citing <u>Craig v. Harney</u>, 331 U.S. 367, 374 (1947)).  The presumption of openness in judicial proceedings "promotes 'public scrutiny of the judicial process, improves the quality of testimony, encourages public respect for the judicial system, and provides therapeutic value to the community.'"  <u>Marten</u>, 219 F.R.D. at 391.

Notwithstanding the presumption of openness, in <u>Does I thru XXIII v.</u> <u>Advanced Textile Corp.</u>, 214 F.3d 1058, 1068 (9th Cir. 2000) ("<u>Advanced</u> <u>Textile</u>"), the Ninth Circuit held that a party may preserve his or her anonymity in "special circumstances."  In that case, the plaintiffs were foreign factory workers in Saipan who claimed their employers violated the Fair Labor Standards Act.  <u>Id.</u> at 1063.  The plaintiffs had been induced into signing employment contracts, were required to pay several thousands of dollars in debt to employment "recruiters," and were fearful that their lawsuit would prompt retaliation in the form of physical violence, deportation, arrest in their home country, and acceleration of their debts. <u>Id.</u> at 1063-65.  The plaintiffs consequently moved for leave to proceed under fictitious names, which the district court denied.  <u>Id.</u> at 1064.

On appeal, the Ninth Circuit held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  <u>Id.</u> at 1068.  The court also ruled that, where pseudonyms are used "to shield the anonymous party from retaliation, the district court should determine the need for anonymity by evaluating the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation."  <u>Id.</u>

6

(internal citations omitted).  A court must also determine the precise prejudice to the opposing party and whether the public's interest would best be served by requiring litigants to reveal their identity.  Id.  The burden is on the party seeking anonymity to prove the need for anonymity outweighs the other party's prejudice and public interest.  Id.  Because the plaintiffs demonstrated "an objectively reasonable fear of extraordinarily severe retaliation" that outweighed the defendants' prejudice and the public's interest, the Ninth Circuit held that they may conceal their identities.  Id. at 1063, 1069.

Here, the parties agree that, in determining whether Plaintiffs may proceed anonymously, this Court must balance the Advanced Textile factors.  The Court addresses each factor in turn.

A.            Severity of the Threatened Harm

Plaintiffs argue they fear threatened physical, economic, and social harm from the "public at large" if their identities are disclosed.[5]  (Motion at 8.) Defendants maintain there is "no history of any such harm to plaintiffs who have challenged Native Hawaiian preferences and entitlements" and that the threat of

_____

[5] Plaintiffs make clear they are "fearful of 'public harassment and retaliation,' as reflected in 'public threats and other vitriol, not with possible 'retaliation and ostracism at [the school] if and when they are admitted.'"  (Reply at 3 n.2 (emphases in original).)

7

hostile public reaction "will only with great rarity warrant public anonymity."
(Opp. at 10-15.)

As evidence of threats of harm that Plaintiffs fear, they point to
comments made about a student who previously challenged Defendants'
admissions policy, to acts of physical violence in the community, and to internet
comments regarding Plaintiffs in this case.

First, Plaintiffs point to newspaper articles discussing public
comments made after Defendants were ordered to admit into their school Brayden
Mohica-Cummings, a non-Hawaiian student who had challenged Defendants'
admissions policy in a separate case.  (Motion at 2; Plaintiffs' Exs. 3-4.)  Plaintiffs
note that the severity of public threats against Mohica-Cummings was serious
enough to prompt United States Attorney Ed Kubo to issue a warning against "any
violence or threats of violence."  (Plaintiffs' Exs. 3-4.)  Although Kubo did issue
such a warning, he was "unaware of any credible threats against Brayden Mohica-
Cummings."  (Plaintiffs' Ex. 4.)  Additionally, after Kubo's warning was
announced, Mohica-Cummings's own attorney "said [the warning] was
unnecessary."  (Defendants' Ex. D at 2.)  Considering that no credible threats were
known to Kubo at the time of the warning and that Mohica-Cummings's attorney

said the warning was unnecessary, the news articles do not support Plaintiffs' fear of threatened harm.

Plaintiffs also offer news articles about physical attacks on minors and adults that were based on their race, sex, and disability and in which the words "f---- haole" were used.[6]  (Plaintiffs' Exs. 6-8.)  These attacks were not connected to any of the parties in this action, nor do they involve threats against anyone challenging Defendants' admissions policy.  The articles are not evidence of threats against Plaintiffs.

Plaintiffs also point to internet comments posted in response to news articles about this lawsuit.  (Plaintiffs' Exs. 10-20.)  The internet comments are posted by anonymous persons and are directed at Plaintiffs and their attorneys. (Plaintiffs' Exs. 11-12, 14-20.)  But even Plaintiffs acknowledge "the crucial distinction between Plaintiffs' counsel and Plaintiffs themselves:  established professionals versus vulnerable children."  (Reply at 10.)  Plaintiffs' counsel do not seek to proceed anonymously, and they do not claim to fear retaliation.  Thus, for purposes of deciding whether Plaintiffs' threatened harm is severe, this Court focuses on the threats directed at Plaintiffs.

---

[6] "'Haole' is a Hawaiian word often used to describe a Caucasian person."  Chenoweth v. Maui Chem. & Paper Prods., Inc., CV. No. 07-00092 DAE-KSC, 2008 WL 4107906, at *7 n.3 (D. Haw. Sept. 3, 2008).

9

Of all the internet comments highlighted by Plaintiffs, only four are conceivably made against Plaintiffs.  The first two comments are:

> Just think how much more fun it would be at [the school] if they could celebrate Kill Haole Day like all the other schools!"

and

> this is all for the money.  why not go to [the University of Hawaii] or [Hawaii Pacific University]?  why go somewhere youre not wanted?  Youre jus gonna get lickens everyday and drop out anyway, so why bother?

(Plaintiffs' Ex. 11 at 1, Ex. 12 at 1.)  These comments are aimed at how Plaintiffs might be treated if they are admitted to Defendants' school.  However, Plaintiffs explicitly state that they are not fearful of  "retaliation and ostracism at KS if and when they are admitted."  (Reply at 3 n.2.)  Thus, these comments are not indicative of threatened harm.

The other comments directed at Plaintiffs state:

> These 4 kids and their families should be ashamed of themselves for trying to make a quick buck even their attorneys!  Auwe[7] to the Haoles!  Kamehameha Schools be the Warriors for all of us hawaiians now!

and

---

[7] "Auwē" means "Oh! Oh dear! Oh boy! Alas! Too bad! Goodness!"  Mary Kawena Pukui & Samuel H. Elbert, <u>Hawaiian Dictionary</u> 31 (Revised and Enlarged ed. 1986).

> When the economy is DOWN, we in the USA are up in
> LETS SUE!  for money!  This is just a vision of how
> people try to screw others tradition and their "will" for
> their greed.  For profit or greed they try to take the "dead
> of a loved one".  before Hawaii turning USA or not.  a
> will should be honored regardless . . .
> Now lets imagine, what they're doing . . . will come
> around one way or another back to them.  Karma do[es]
> happen.

(Plaintiffs' Ex. 20 at 4; Ex. 19 at 2 (ellipses points in original).)  These comments

are not threats but do voice the commentators' frustration with this lawsuit, as do

other comments in Plaintiffs' Exhibits.  Indeed, none of Plaintiffs' evidence shows

any threat of physical violence or economic harm against Plaintiffs, although the

declarations of Plaintiffs' parents state their subjective fear of such retaliation.  At

most, Plaintiffs' evidence suggests they may be socially ostracized.  This is unlike

the Advanced Textile plaintiffs' fear of "extraordinary retaliation [of] deportation,

arrest, and imprisonment."  214 F.3d at 1063, 1071.  Without more, the threatened

harm Plaintiffs fear is not severe, and this factor therefore weighs in favor of

denying anonymity.

### B.     Reasonableness of Plaintiffs' Fears

This Court must also consider the reasonableness of Plaintiffs' fears.

Advanced Textile, 214 F.3d at 1071.  Plaintiffs "are not required to prove that the

defendants intend to carry out the threatened retaliation."  Id.  "What is relevant is

that plaintiffs were threatened, and that a reasonable person would believe that the threat might actually be carried out." Id.

Plaintiffs' parents state their subjective fear of physical, economic, and social retaliation.  (James Doe Declaration ¶¶ 6-8; Kate Doe Declaration ¶¶ 6-8; Laura Doe Declaration ¶¶ 6-8.)  As discussed above, the only "threats" – or, more accurately, comments – directed at Plaintiffs suggest they may be socially ostracized.  Plaintiffs contend that their fears are reasonable in light of Ed Kubo's warning prompted by the Mohica-Cummings lawsuit, the news articles of physical attacks unrelated to the parties here, and the declaration of the plaintiff's mother in Doe 1 who says they "fear for our safety if our identities are made public."  But without evidence of any threats of physical violence or economic harm against them, a reasonable person would not believe that Plaintiffs might be physically or financially harmed.  See Advanced Textile, 214 F.3d at 1071 ("What is relevant is that plaintiffs were threatened . . . .").

Moreover, because the merits of this action have already been decided by the Ninth Circuit, this case will likely conjure less public reaction than did the Mohica-Cummings and Doe 1 lawsuits.[8]  Unlike in those cases where this Court

---

[8] No evidence in the record suggests that Mohica-Cummings or the plaintiff in Doe 1 was harmed.  In fact, the record shows that Mohica-Cummings and Kalani Rosell, another non-Hawaiian student who was admitted into one of Defendants' schools, have been warmly welcomed at their respective schools.  (Defendants' Exs. C-D.)

was faced with deciding the merits of Defendants' admissions policy for the first time, we now have the Ninth Circuit's en banc decision in favor of Defendants. The issues that will be litigated in this Court are not so controversial.  Thus, at this point in the case, the issues to be decided will trigger little, if any, emotional reaction by the public.

Plaintiffs also point to the internet comments about this case as evidence that their fears are reasonable.  The comments were posted by anonymous persons who were reacting to news articles about the filing of this lawsuit.  Like in Beaumont, 172 F.R.D. at 217, the comments "contain[] disapproval and frustration by some local citizens for bringing this suit."  As in that case, however, the record here lacks any threats against Plaintiffs.  Without evidence of any threats against Plaintiffs and considering that this Court is bound by the Ninth Circuit's ruling in Defendants' favor, a reasonable person would not believe that the anonymous internet commentators would harm Plaintiffs.

C.    Plaintiffs' Vulnerability

Plaintiffs contend they are particularly vulnerable because they are children.  (Motion at 10.)  Defendants agree that this factor "does weigh in favor of anonymity" because Plaintiffs are minors, though they argue that "Plaintiffs have provided no evidence that the minor plaintiffs are vulnerable to retaliation."  (Opp.

at 24.  Because "[t]he vulnerability of . . . minor plaintiffs is undoubtedly real,"

Beaumont, 172 F.R.D. at 216, this factor weighs in favor of keeping Plaintiffs'

identities anonymous.

      D.    Prejudice to Defendants

      This Court must determine the precise prejudice to Defendants at each

stage of the proceedings if Plaintiffs are permitted to proceed anonymously.

Advanced Textile, 214 F.3d at 1068.  Defendants argue they will be prejudiced

because allowing Plaintiffs to proceed anonymously will (1) "validate their

outrageous and unfounded charges against" Defendants, (2) allow Plaintiffs to

portray themselves "sympathetically," and (3) hinder Defendants' ability to gather

evidence from third parties regarding Plaintiffs' claim for damages and their

standing in this lawsuit.  (Opp. at 25-29.)

      The Court disagrees with Defendants that allowing Plaintiffs to

proceed anonymously will validate any "outrageous and unfounded charges"

against them.  The law in the Ninth Circuit regarding the merits of this case is

already settled in Defendants' favor.  Permitting anonymity will not validate

Plaintiffs' claims in any way.

      Defendants also argue that, "[i]f Plaintiffs are allowed to maintain

their anonymity, Defendants will have no way to counter their attorneys' attempts

14

to portray them sympathetically" in the media.  (Opp. at 27.)  In response,

Plaintiffs say they "are willing to agree (as part of the protective order they seek)

that their counsel not speak 'sympathetically' about them in public."  (Reply at 12

n.9.)  Defendants' concern is therefore mitigated, and they will not be prejudiced

by Plaintiffs' portrayal in the media.  Cf. Advanced Textile, 214 F.3d at 1068

(noting that courts must determine "whether proceedings may be structured so as to

mitigate that prejudice").

        The Court also rejects Defendants' argument that they will be

prejudiced when seeking "discovery on damages [from] third parties."  (Opp.

at 29.)  Given the Ninth Circuit's ruling in Doe 1, this case will have to proceed

through the Ninth Circuit and the Supreme Court's discretionary review before

damages become an issue.  At this point in the proceedings, no discovery as to

damages is necessary, and Defendants are not prejudiced in this regard.

        Lastly, Defendants argue that their "ability to litigate the important

threshold issue of standing will also be unfairly burdened," even if Plaintiffs are

willing to provide their names to defense counsel for purposes of standing-related

discovery.  (Opp. at 28.)  At the hearing on this Motion, Defendants' counsel stated

his intent to challenge Plaintiffs' standing in this case and to conduct discovery

from third parties on that issue.  The Court noted that discovery from third parties,

if any, will likely be very limited.  Defense counsel agreed and stated that

Defendants intend to first seek discovery from the parties themselves and may not

have to conduct any third party discovery.  Thus, it remains speculative whether

anonymity will burden any third party discovery.

Defendants do intend to depose Plaintiffs and their parents, however,

and plan on seeking documents from Defendants' own employees, including its

admissions office.  Such discovery will be burdened if Plaintiffs' identities are kept

secret.  For example, if Defendants seek Plaintiffs' application records from the

school's admissions office, Defendants will have to ensure that care is taken to

keep Plaintiffs' identities from staff who may need to assist in obtaining those

documents.  Moreover, even if Plaintiffs' names are not revealed, it will be

difficult for Defendants to ensure that other identifying information remains

confidential.  Plaintiffs already brought to the Court's attention their concern that

defense counsel used identifying information in an email sent to them.  Even in

Doe 1, confidential settlement terms were disclosed to the media.  Given this

history of disputes over confidential information, and considering that Defendants'

standing-related discovery from the parties themselves will be hampered, this

factor weighs in favor of denying anonymity.  See, e.g., Merten, 219 F.R.D. at 394

(concluding that the defendants may be prejudiced if the plaintiffs were allowed to

proceed anonymously because the defendants "must in fairness be allowed to explore whether plaintiffs have standing, which they can do only if plaintiffs are identified").

E.    Public's Interest

Plaintiffs contend that the public's interest in knowing their identities is "non-existent" because "disguising plaintiffs' identities will [not] obstruct public scrutiny of the important issues" and "will serve the public's interest in this lawsuit by enabling it to go forward."  (Motion at 11-12; Reply at 15.)  Defendants argue that the "public has the right to know the identity of Plaintiffs and the complete basis for any decision either in their favor or against them, specifically that Plaintiffs have at best marginal qualifications to attend KS and . . . were denied admission based upon facts and circumstances which have nothing to do with their ancestry."  (Opp. at 29-30.)

As discussed above, "Plaintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings."  See Advanced Textile, 214 F.3d at 1067.  Plaintiffs' parents each declare that, "if faced with the choice between revealing my child's identity to the public or having to terminate my family's participation in the lawsuit, [we] almost certainly would choose the latter."  (James Doe Declaration ¶ 10; Kate Doe Declaration ¶ 10; Laura Doe

17

Declaration ¶ 10.)  Although the public does have an interest in seeing this case go forward, <u>Advanced Textile</u>, 214 F.3d at 1073, "[t]he people have a right to know who is using their courts."  <u>United States v. Stoterau</u>, 524 F.3d 988, 1013 (9th Cir. 2008).  Plaintiffs and Defendants agree this case presents extremely controversial and very important issues in Hawaii.  (Motion at 3; Opp. at 5.)  As in other civil rights cases, the public has a strong interest in knowing who is using the courts to vindicate their rights.

Furthermore, Defendants intend to challenge Plaintiffs' standing in this case.  When such a motion is brought, this Court will issue an order on the motion.  If Plaintiffs' identities are kept secret from the public, the Court's order will have to speak in very general terms or be sealed if identifying information is discussed.  In either case, the public might not "fully understand the basis for the Court's decision" as to standing.  (Opp. at 30.)  Thus, this is not a case where party anonymity would "not obstruct the public's view of the issues."  <u>See</u> <u>Advanced Textile</u>, 214 F.3d at 1068 (citing <u>Stegall</u>, 653 F.2d at 185).  Accordingly, the public interest in seeing this case go forward is outweighed by the public's "right to know who is using their courts."  <u>Stoterau</u>, 524 F.3d at 1013.  This factor therefore weighs in favor of denying anonymity.

F.     Balancing the Factors

Plaintiffs may preserve their identity if they prove the severity of their

threatened harm, the reasonableness of their fears, and their vulnerability outweigh

the prejudice to Defendants and the public's interest in knowing their identity.

Advanced Textile, 214 F.3d at 1068.  If Plaintiffs have not asserted enough to

establish a need for anonymity, "this cannot outweigh the prejudice" to

Defendants.  Texaco, Inc., 2007 WL 2850035, at *6.

The severity of the threatened harm and the reasonableness of

Plaintiffs' fears do not weigh in favor of anonymity.  At most, Plaintiffs are

vulnerable children who have a reasonable fear of social ostracization.  However,

"[t]he threat of hostile public reaction to a lawsuit . . . will only with great rarity

warrant public anonymity."  Beaumont, 172 F.R.D. at 217.

Unlike in Advanced Textile, where the plaintiffs were vulnerable to

physical violence, deportation, and imprisonment, Plaintiffs here fail show a

sufficient "need for anonymity."  214 F.3d at 1068.  "This cannot outweigh the

prejudice such an order would work on [D]efendants, even at this stage of the

proceedings."  Texaco, Inc., 2006 WL 2850035, at *6.  Indeed, Defendants will be

prejudiced as to their standing-related discovery, and the public has a significant

interest in knowing who Plaintiffs are.  Therefore, Plaintiffs' need for anonymity

19

does not outweigh prejudice to Defendants and the public's interest in this case. See Advanced Textile, 214 F.3d at 1068.

The federal courts have heard many controversial education-related civil rights cases brought by minor plaintiffs who proceeded in their own names. See, e.g., Lee v. Weisman, 505 U.S. 577 (1992) (minor plaintiff and parent challenging prayer readings at middle school graduation ceremony); Runyon v. McCrary, 427 U.S. 160 (1976) (minor plaintiffs challenging school's policy of denying admission based on race); Lau v. Nichols, 414 U.S. 563 (1974) (class action brought by non-English speaking Chinese minors challenging "unequal educational opportunities"); Sch. Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203 (1963) (minor plaintiffs and parents challenging daily Bible readings at school); Brown v. Bd. of Educ. of Topeka, Shawnee County, Kan., 347 U.S. 483 (1954) (minor plaintiffs seeking admission to public schools on a nonsegregated basis); Minersville Sch. Dist. v. Gobitis, 310 U.S. 586 (1940) (minor plaintiffs challenging mandatory pledge of allegiance).  Only in an "unusual case" may plaintiffs proceed anonymously.  Advanced Textile, 214 F.3d at 1067.  Where, as here, Plaintiffs have not shown their need for anonymity outweighs Defendants' prejudice and the public interest in this case, there is no need to deviate from the "presumption, firmly rooted in American law, of openness in judicial

20

proceedings." <u>Merten</u>, 219 F.R.D. at 390; <u>see also</u> <u>Advanced Textile</u>, 214 F.3d at 1068.  Plaintiffs seek the protections and benefits of litigating their action, and they must do so openly.

   G. Disclosure of Plaintiffs' Identities Is Temporarily Stayed

   Plaintiffs' parents state in their declarations that they may terminate their families' participation in this lawsuit if their children are not permitted to proceed anonymously.  (James Doe Declaration ¶ 10; Kate Doe Declaration ¶ 10; Laura Doe Declaration ¶ 10.)  The Court understands that Plaintiffs may need some time to decide whether to pursue this action.  The Court therefore stays the disclosure of Plaintiffs' identities for ten days from the date this order is filed.

CONCLUSION

   For the foregoing reasons, Plaintiffs' Motion For Leave To Proceed Anonymously and For Related Protective Order is DENIED.  The disclosure of Plaintiffs' identities is stayed for ten days from the date this order is filed.

<u>Doe v. Kamehameha School/Bernice Pauahi Bishop Estate, et al.</u>, Civ. No. 08-00359 JMS-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY AND FOR RELATED PROTECTIVE ORDER.

21

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 28, 2008.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Doe v. Kamehameha School/Bernice Pauahi Bishop Estate, et al., Civ. No. 08-00359 JMS-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY AND FOR RELATED PROTECTIVE ORDER.