**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JACOB DOE, a minor, by parents and next friends, James and Joyce Doe; JANET DOE, a minor, by parents and next friends, James and Joyce Doe; KARL DOE, a minor, by parents and next friends, Kirk and Kate Doe; LISA DOE, a minor, by mother and next friend, Laura Doe,

　　　　　*Plaintiffs-Appellants,*

　　v.

KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; NAINOA THOMPSON, in his capacity as Trustee; DIANE J. PLOTTS, in her capacity as Trustee; CORBETT A.K. KALAMA, in his capacity as Trustee; ROBERT K.U. KIHUNE, in his capacity as Trustee; J. DOUGLAS ING, in his capacity as Trustee,

　　　　　*Defendants-Appellees.*

No. 09-15448

D.C. No.
1:08-cv-00359-JMS-BMK
District of Hawaii,
Honolulu

ORDER

Filed November 8, 2010

Before: Robert R. Beezer, Susan P. Graber and
Raymond C. Fisher, Circuit Judges.

Order;
Dissent by Chief Judge Kozinski;
Dissent by Judge Reinhardt;
Concurrence by Judge Beezer

18373

## ORDER

The panel has voted to deny the petition for panel rehearing. Judges Graber and Fisher vote to deny the petition for rehearing en banc and Judge Beezer so recommends.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

---

Chief Judge KOZINSKI, dissenting from the denial of rehearing en banc:

These are some of the threats made after plaintiffs, four non-native Hawaiian children, filed their civil rights suit:

- It's about time that someone put some pressure on these litigious people and their kids! (online post)

- 4 kids . . . . will need 10 bodyguards lol (online post)

- Good that the judge ordered them to make these little brats names known to the public, so they can be tormented (online post)

- Sacrifice them!!!!!!!! (online post)

- [If their names were revealed, the Does] would have to watch their backs for the rest of their lives! (online post)

- [E]veryone is going to know who your clients are. . . . [Y]ou and your haole [white] clients can get the lickins' you deserve. Why do you fucking haoles even come to Hawaii . . . ? (said over the phone to the Does' attorney)

If threats like that were made against me or my family, I'd be worried. I'd call the U.S. Marshals, as federal judges are repeatedly cautioned to do when targeted by a threat, whether it's made in person, by mail, by telephone or over the internet. I doubt I'm alone. My guess is that most federal judges, including those who decided this case here and below, would take such threats directed against *them* seriously; the speakers, if they could be identified, might well be prosecuted. *See, e.g.*, Mark Fass, *Blogger Found Guilty of Threatening Judges in Third Federal Trial*, N.Y. L.J., Aug. 16, 2010, at 1.

I believe that the federal courts must be safe havens for those who seek to vindicate their rights. No litigant should fear for his safety, or that of his family, as a condition of seeking justice. Sure, if the purported fear is that they will be captured by Martians and served as dinner, that can be dismissed as fanciful. But when there are real statements, oral and written, that suggest or urge physical violence on account of the lawsuit, how can we force parents to the grim choice of abandoning the rights of their children or exposing them to the risk that they "would have to watch their backs for the rest of their lives!"? I don't believe that we should have a double standard —one for ourselves and another one for the parties before us —and so have no difficulty concluding that the district court here egregiously abused its discretion when it denied plaintiffs the right to proceed as Does.

Fortunately, the matter is not beyond repair. When the case returns to the district court, I expect that plaintiffs will seek to set aside the dismissal of their claims, perhaps under Fed. R. Civ. P. 60(b), so they can file a complaint that complies with Fed. R. Civ. P. 5.2(a). I'm confident that the district

court will grant them such relief; it would be a travesty if it did not. After all, the court is charged with safeguarding the rights of the litigants, and I find it passing strange that the district judge, the magistrate judge and their staffs all overlooked a rule of which they are reminded every time they log into PACER. Indeed, all who log in are required to check a box indicating that they have read, understand and will comply with the following notice:

> IMPORTANT NOTICE OF REDACTION RESPONSIBILITY: All filers must redact: Social Security or taxpayer-identification numbers; dates of birth; names of minor children; financial account numbers; and, in criminal cases, home addresses, in compliance with Fed. R. Civ. P. 5.2 or Fed. R. Crim. P. 49.1. This requirement applies to all documents, including attachments.

The failure to bring this rule to the attention of the parties, and advise them of their right and responsibility to abide by it, seems like the kind of oversight the district court would be anxious to set right, perhaps even sua sponte. Plaintiffs should not be denied a chance to vindicate their rights because the court blundered its responsibility to ensure the parties safeguard the identities of minor children, as mandated by Rule 5.2(a).

Setting aside the district court's judgment and proceeding under Rule 5.2(a) should also be desirable from the perspective of defendant, the Kamehameha Schools. The difficult legal issue that lies at the heart of this dispute was resolved in its favor in our en banc court by the narrowest of margins. *Compare Doe* v. *Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 829 (9th Cir. 2006) (en banc) (admissions policy giving preference to Native Hawaiians did not violate 42 U.S.C. § 1981), *with id.* at 857 (Bybee, J., dissenting) (policy "amounts to a classic violation of § 1981"). The issue will remain unsettled until the Supreme Court has

had an opportunity to address it. "Liberty finds no refuge in a jurisprudence of doubt," the Supreme Court famously told us in another context. *Planned Parenthood of Se. Pa.* v. *Casey*, 505 U.S. 833, 844 (1992). The parties here, and defendant in particular, must surely wish that doubt about the legality of the Schools' admissions policy be laid to rest. I hope and trust that defendant will not oppose—and indeed will support—reinstating plaintiffs' complaint under the protective umbrella of Rule 5.2(a) so this uncertainty can be resolved once and for all.

---

REINHARDT, Circuit Judge, with whom Chief Judge KOZINSKI joins, dissenting from the denial of rehearing en banc:

Our court inexplicably and contrary to all precedent holds that a district judge acts within his discretion when, in a racially charged environment, he requires juveniles to publicly disclose their names, and put their physical and mental well-being at risk, in order to bring a civil rights lawsuit in federal court. *Doe v. Kamehameha*, 596 F.3d 1036, 1041, 1044-45 (9th Cir. 2010). Because it is entirely unacceptable to ask minors to test the seriousness of the "undoubtedly severe" threats that have been made against them in order to gain access to the federal legal system, I strongly dissent from the court's refusal to hear this case en banc. *Id.* at 1043. I also dissent because the members of the three judge panel, like the district judge and the magistrate judge before them, were apparently unaware that a special rule applies to the right of juveniles to litigate anonymously, and thus failed to consider the federal rule of civil procedure which permits juvenile litigants to assert anonymity in the ordinary course of civil litigation. In sum, the decision this court declines to take en banc results from a failure to consider the applicable rule regarding juvenile litigants and, even more important, reflects an inde-

fensible insensitivity to the rights and vulnerabilities of minors seeking to enforce their civil rights.

The young would-be plaintiffs in this case were white students who brought a suit for admission to a natives-only Hawaiian school in what the United States Attorney had declared to be a racially charged environment. The minor litigants, whose names had not yet been disclosed, were subjected to what even the panel terms "threats of physical retaliation [that were] undoubtedly severe," *id.*, anonymous threats made over the internet, such as " "4 kids . . . will need 10 bodyguards lol," "Sacrifice them!!!!!!!!," and that they "would have to watch their backs for the rest of their lives!" *Id.* at 1041. Both the magistrate and district judges denied plaintiffs' request to proceed anonymously, notwithstanding declarations that the plaintiffs would almost certainly dismiss their lawsuit rather than disclose their identities. The panel — despite its apparent skepticism of the combined reasoning of the magistrate judge and district judge, which it treated as interchangeable — affirmed solely because it concluded that the district judge, though probably wrong, did not abuse his discretion. In fact, both the district judge and the magistrate judge made many errors of law amounting to an abuse of discretion, including the failure to so much as acknowledge Federal Rule of Civil Procedure 5.2(a), which provides for the anonymity of juveniles in federal litigation. Only by failing to recognize that the abuse of discretion standard does not relieve this court of its obligation to engage in a meaningful review of the decision below could the panel have issued a ruling so out-of-step with the history of juvenile litigation, and only by failing to recognize the gravity of the district court's errors and their potential effect on all future juvenile litigants could this court have declined to grant a rehearing en banc.

## I.

The defendants in this case took the unusual step of contesting plaintiffs' motion to proceed anonymously. Some his-

tory may explain why defendants fought so hard to win that contest. The Kamehameha Schools were founded in 1884 by Princess Bernice Pauahi Bishop, the last descendant of the Hawaiian monarchy, in order to preserve native Hawaiian culture and identity. *Id.* at 1039. The schools are the beneficiaries of a trust valued at over $9 billion. The Board of Trustees has interpreted the terms of the trust to require the admission of native Hawaiians, to the almost complete exclusion of non-natives. Two years before the initiation of this litigation, the schools had prevailed in a similar suit challenging their admissions policies; in that suit they made no objection to the plaintiff's anonymity. *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827 (9th Cir. 2006) (en banc) ("Doe I"). When the school prevailed before our en banc court by a vote of 8-7 (and I was a member of the majority), *id.*, the Doe plaintiff filed a petition for a writ of certiorari. The case settled before the Supreme Court could act, however, at a sum reported in the media to be $7 million. *See Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 550 U.S. 931 (2007); Jim Dooley, *Kamehemeha Schools Settled Lawsuit for $7m*, HONOLULU ADVERTISER, Feb. 8, 2008, *available at* http://the.honoluluadvertiser.com/article/2008/Feb/08/ln/hawaii802080371.html.

Both Kamehameha suits unfolded in a racially charged atmosphere. In recent years, Hawaii has endured a spate of anti-Caucasian violence. Students, in particular, have been the victims. The last school day in Hawaiian schools, for example, has long been known as "Kill Haole Day," with white students—"Haoles"—targeted for harassment and physical abuse.[1] In 2008, the U.S. Department of Education's Office of Civil Rights concluded an investigation of the systematic bullying of non-native students in Hawaiian schools by requiring

---

[1]Craig Gima, "Kill Haole Day" Linked to Hate-Crime Bill, Honolulu Star-Bulletin, Mar. 24, 1999; *see also* Larry Keller, *Prejudice in Paradise: Hawaii Has a Racism Problem*, S. POVERTY LAW CENTER INTEL. REP., Fall 2009.

the Hawaiian Department of Education to implement over two dozen corrective actions.[2] Intimations of such violence were a feature of the first Kamehameha suit, in which there were calls to "break [the plaintiff's and his attorney's] every bone and make [those] bastards suffer," predictions that "now the boy will have to pay," and suggestions that the identities of the plaintiff and his mother should be exposed to force them to "stand up and face those that they are robbing." *Doe*, 596 F.3d 1036, 1040 (9th Cir. 2010). Around the time of the first Kamehameha case, the U.S. Attorney for Hawaii noted a "growing sense of anger and rage" prompting him to warn the public that violence based on race is a federal offense. *Id.*

Although in the first Kamehameha case the schools did not object to the plaintiff's desire to proceed anonymously—and even entered into a stipulation allowing him to do so—this time they vigorously objected to plaintiffs' request for Doe status. Plaintiffs then filed in the district court a motion for leave to proceed anonymously, which included declarations that, in light of the charged atmosphere surrounding their suit, plaintiffs would "almost certainly" allow their actions to be dismissed, with prejudice, if they were denied the opportunity to proceed without publicly disclosing their identities. When the district judge denied leave to proceed as Does, the plaintiffs allowed their suit to be dismissed with leave to appeal. *Doe*, 596 F.3d at 1038. While we can only speculate as to the defendants' motivation for objecting to anonymous proceedings, in light of the outcome of the first Kamehameha case one might presume that they were willing to use any permissible tactics to avoid a second trial over the legality of the schools' admissions policy.

---

[2]Rod Thompson, *School Discrimination Probe Results in Deal*, HONOLULU STAR-BULLETIN, Jan. 16, 2009.

## II.

Under Federal Rule of Civil Procedure 5.2(a), adopted in 2007, "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . . the minor's initials . . . ." Fed. R. Civ. P. 5.2(a).[3] Neither the magistrate judge nor the district judge, even mentioned, let alone considered, Rule 5.2(a) when denying the plaintiffs' request for anonymity; nor did the panel when it reviewed the denial. Instead, they all relied exclusively on the five-factor balancing test we set forth in a case pertaining to adult litigants, *Does I Thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068 (9th Cir. 2000), a test that is inconsistent with the congressionally prescribed Rule of Civil Procedure that governs the rights of minors to anonymity. The failure to consider the relevant federal rule, a rule that establishes a special approach and procedure for granting juvenile anonymity during litigation, is in itself a legal error and abuse of discretion.

In applying the *Advanced Textile* test, the panel (like the magistrate judge and the district judge before it) relied heavily on the concept of the general public interest in open courts in concluding that the juvenile litigants were properly denied anonymity. *See, e.g.*, *Doe*, 596 F.3d at 1042-43.[4] Congress's

---

[3]Although Rule 5.2 speaks in terms of the use of initials, the purpose is to ensure anonymity in the same manner as is ensured by the use of the term "Doe." Too many Does make it difficult for lawyers and judges to identify specific cases, keep track of which is which, and locate precedent. The district court could have required the use of initials instead of Does, unless such use would have led to a breach of anonymity given the nature of the dispute and its history.

[4]The panel purported to affirm on the basis of prejudice to the defendant schools, as well. *Id.* at 1042 ("[T]he district court did not unreasonably conclude that the public interest and possible prejudice to the defendants outweigh the plaintiffs' interest in anonymity."). Nonetheless, this part of the panel's affirmation rested almost entirely on its assessment of the pub-

ratification of Rule 5.2(a), however, makes clear its judgment that the interest of minors in privacy is greater than the public's interest in learning their names, even when there is no particular threat to the juvenile's physical safety or well-being. Unlike the view endorsed by the panel, the Federal Rules of Civil Procedure reflect a public policy of protecting juveniles from the harm that can befall them as a result of disclosing their identities in the course of litigation. The reason underlying that policy is dramatically illustrated in this case, in which the unidentified juvenile litigants had already been subjected to "undoubtedly severe" threats of physical violence by the time they submitted their request for anonymity. The principal basis for the panel's holding in this case — that the public for some reason has an interest in learning the identities of youthful civil rights litigants — is thus contrary to the policy that motivated Congress in ratifying Rule of Civil Procedure 5.2(a).

Rule 5.2(a) similarly exposes as contrary to federal policy the panel's holding that, in order to proceed anonymously in district courts, the juvenile plaintiffs "must show both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reasonable." *Doe*, 596 F.3d at 1043.[5] Rule 5.2(a) contemplates no such showing, and the panel's threshold test thus directly

---

lic interest, as the panel's discussion of prejudice purported to affirm the district court solely on the basis of reasons that the district judge did not offer and that the magistrate judge rejected outright. *Compare Doe*, 596 F.3d at 1045 n.7 ("[T]he district court did not abuse its discretion by finding that defendants would have been hindered in their efforts to gather third-party discovery concerning standing and in defending the high-profile case in the media, if not in the courts."), *with* Order Denying Plaintiffs' Motion for Leave to Proceed Anonymously and for Related Protective Order, *Doe v. Kamehameha Schools*, Civ. No. 08-00359, at 15 (D. Haw. Oct. 28, 2008) (rejecting defendant's arguments that third-party discovery and defendant's efforts to conduct a public media campaign would be prejudiced by anonymity).

[5] See *infra*, Part VI, for more detailed discussion of the novel threshold test that the panel adopted in this case.

conflicts with the policy Congress endorsed in providing for juvenile anonymity as the general practice in federal courts. By the same token, Rule 5.2(a) highlights the speciousness of the panel's suggestion that anonymity would be inappropriate because defendants "would have been hindered . . . in defending the high-profile case in the media." *Id.* at 1045 n.7.[6] It is not clear how a litigant's desire to wage an extra-judicial media campaign could ever appropriately influence a trial judge's ruling with respect to the rights of an opposing party. But the notion that the youthful plaintiffs should be stripped of their anonymity because the defendants would be prejudiced in their media campaign is especially inappropriate in light of Congress's judgment, reflected in Rule 5.2(a), that juvenile litigants as a general rule are entitled to anonymity throughout the course of federal litigation.

While the panel's untenable analysis of the public interest and the other factors on which it relied has led to an unprecedented and unjust result in this case, such a result will likely not recur in the future, at least not in the case of juvenile litigants. Counsel in this case were either not aware of Rule 5.2(a), or for some reason did not inform either the district court or the court of appeals of its existence, thereby allowing both courts to issue opinions that seriously misstate the law, and to reach their decisions without considering the most pertinent federal rule. It is astonishing that there was not a single counsel on either side who was aware of the rule and felt an obligation to bring it to the district court's and our court's attention.

In the future, should a minor plaintiff seek to file a lawsuit without disclosing his identity, the district court should not look to the opinion the panel has issued here but to Rule 5.2(a) of the Federal Rules of Civil Procedure. When doing

---

[6]Interestingly, although the panel affirmed the district judge on this basis, it is not, in fact, an argument that either the district judge or the magistrate judge made. *See supra*, note 4.

so, the district court will undoubtedly recognize that the rule reflects a policy judgment that little if any public interest lies in learning the identity of youthful litigants while a strong public interest exists in protecting their identities. The court will then undoubtedly not repeat the panel's mistaken analysis of the public interest. It will also undoubtedly recognize that in order to proceed anonymously in federal court, minors need not establish a reasonable fear that serious threats made against them will be carried out, or even that any threats against them have been made. Thus, this troubling opinion will, fortunately, be of little consequence and no precedential value in the case of minor litigants, nor will *Advanced Textile*, which all the judges concerned purported to follow.

To be clear, the panel's decision should have been taken en banc and reversed for any number of reasons. First, the panel failed to consider the Federal Rule of Civil Procedure that governs the right of juveniles to file suits without disclosing their identities. Second, the policy underlying that rule makes clear that the reasons advanced by the magistrate judge and the district judge, and affirmed by the panel, for requiring the juveniles to disclose their identities publicly if they wished to pursue this litigation are without merit. Third, even without considering the Rule, it is clear that the denial of anonymity to the young plaintiffs was arbitrary, unreasonable and contrary to uniform practice throughout the nation. Fourth, the panel's ruling is inconsistent with Ninth Circuit precedent. I will discuss the last two points below. The fourth point is of the most practical significance for, as I have explained, while this opinion will have no future force or effect with respect to juvenile litigants, it constitutes the law of the circuit with respect to adult litigants seeking anonymity.

III.

Rule 5.2(a) took effect on December 1, 2007, almost a year before the district court's decision and less than three years prior to the panel's. However, even before the adoption of the

Rule, the American legal system had treated juveniles seeking Doe status favorably and with solicitude. Indeed, no prior appellate court has ever in a published decision refused to allow minors to employ Doe status. *See, e.g.*, *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) ("[F]ictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses."); *Doe v. Steagall*, 653 F.2d 180, 186 (5th Cir. 1981) ("The gravity of the danger posed by the threats of retaliation against the Does for filing this lawsuit must also be assessed in light of the special vulnerability of these child-plaintiffs."). Not only has the panel here distinguished itself as the first appellate tribunal to deny anonymity to juvenile litigants, but it has attained that distinction by being the first to do so in the case of young students seeking to assert their civil rights in an atmosphere of racial tension.

It is difficult to comprehend why the panel felt compelled to hold that young students filing a civil rights suit in order to attend a school from which they were excluded on account of their race or ancestry may be denied the right to file their federal suit anonymously. It is even more difficult to understand why the panel felt compelled to do so on the ground that the minor plaintiffs' fear of the violent internet threats made against them may have been "unreasonable." Why is it necessary that their fear of the "severe threats" have been "reasonable," let alone that there have been any "severe threats" at all? American courts routinely grant juvenile plaintiffs anonymity in matters less serious than this.[7] *See, e.g.*, *Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1255-56 (N.D. Iowa 1995) (granting anonymity to child with severe cardiac and respiratory conditions bringing suit against

---

[7]A Westlaw search for school-related suits under the Individuals with Disabilities in Education Law, for example, reveals hundreds of district court cases in which minor litigants are identified by their initials or as Does.

city under ADA, based upon concerns for privacy and possi-
bility of harassment); *Moe v. Dinkins*, 533 F. Supp 623, 627
(S.D.N.Y. 1981) (allowing anonymity to plaintiffs challeng-
ing law requiring parental consent for minors to marry).
Moreover, the notion that juveniles' identities are protected
during litigation is reflected not only in Rule 5.2(a) and an
unbroken line of federal cases, but also in state statutes
regarding anonymous adoption and juvenile criminal proceed-
*ings. See, e.g.*, Haw. Rev. Stat. § 578-15 (requiring secrecy
of adoption proceedings); Haw. Rev. Stat. § 576B-312
(requiring nondisclosure of child's name in child support pro-
ceedings); Haw. Rev. Stat. § 846D-4 (limiting dissemination
of juvenile criminal information).

The rule allowing minors to protect their identity is espe-
cially important when their suits involve controversial or
unpopular causes. *See, e.g., Santa Fe Indep. Sch. Dist. v. Doe*,
530 U.S. 290, 294 & n.1 (2000) (approvingly discussing dis-
trict court's decision to grant plaintiffs anonymity in Estab-
lishment Clause challenge); *Steagall*, 653 F.2d at 186 (5th
Cir. 1981) (emphasizing vulnerability of youthful plaintiffs in
reversing district court's denial of anonymity for Establish-
ment Clause challenge); *Doe v. Harlan Cnty. Sch. Dist.*, 96 F.
Supp. 2d 667, 670-71 (E.D. Ky. 2000) (granting juvenile
plaintiffs anonymity in Establishment Clause challenge to
religious displays in schools). In the most recent case, a chal-
lenge to the use of the term "under God" in the Pledge of
Allegiance, there were two Doe, one "Doechild," one Poe,
one "Poechild," one Roe, and two "Roechild" plaintiffs. *See
Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007 (2010);
*see id.* at 1095-98 (Reinhardt, J., dissenting) (discussing the
particular susceptibility of schoolchildren to coercion to con-
form to majority views "rather than label [oneself] an oddball,
a troublemaker, and an outcast, [or] subject [oneself] to
humiliating name calling, harassment and derision"). Finally,
in the first *Kamehameha* case, no challenge was made to the
rights of the would-be schoolchildren to litigate their civil
rights claims as Does. The suit brought by plaintiffs here falls

squarely within this tradition, although unlike in the other cases, the plaintiffs who sought anonymity here had already been the objects of threats of violence and severe harm.

The panel's decision, which places a significant burden on young civil rights litigants bringing suit in a racially charged environment, is contrary to our traditional recognition of the vulnerability of minor litigants, to the universal practice of the American court system, to the rule in other circuits, and to fundamental notions of fairness and justice. Were it followed, it would have the effect of endangering juveniles' safety or alternatively closing courthouse doors to youthful civil rights litigants, and in either event of making the pursuit of lawsuits alleging racial discrimination even more difficult than at present. In the end, the panel simply erects one more procedural obstacle in the ever-increasing effort to prevent individuals from presenting the merits of their cases in federal courts.

## IV.

The district court's decision was, even on its own terms, a clear abuse of discretion. In holding otherwise, the panel opinion allows district judges to rely on a number of harmful propositions. Despite expressing serious skepticism about the district judge's reasoning at every turn, the panel affirms by repeatedly invoking the deference due to a trial judge under the abuse of discretion standard of review. *Id.* at 1046. However, when, as here, a trial judge is wrong about *everything*, surely that is an abuse of his discretion. To list but a few of the clearly erroneous notions that gain force by reason of our extravagant deference: plaintiffs may be unreasonable in fearing severe threats of physical retaliation because they are made via the internet; litigants do not reasonably fear threats of serious harm when they are made by unidentified people, some of whom may not intend to carry them out; plaintiffs may be unreasonable in fearing threats because they are countered by calls for non-violence (a fact that would seem actually to highlight the seriousness of the threats); and the truly

inappropriate notion that impairment of a defendant's ability to "defend[ ] the high-profile case in the media" constitutes legal prejudice sufficient to defeat a request for Doe status by young plaintiffs who have been threatened with serious injury.[8] Abuse of discretion surely has limits. Discretion does not include the right to be wrong about everything.

## V.

En banc review was further necessary in this case to determine whether the five-part *Advanced Textile* balancing test we adopted in a case about the threatened deportation of adult factory workers is the appropriate test for all litigants seeking Doe status. Clearly, as we have already seen, it is not the appropriate test for juveniles. Five part or seven part or other multi-part tests are often subject to subjective and inconsistent application. There may be some advantage to such flexibility in our application of certain rules. In other instances it makes appellate review extremely difficult, and precedent of little value. When multi-factor tests are combined with double deference review in a case such as this, there is considerable reason for concern. Here, for example, after the magistrate judge denied the plaintiffs' request for Doe status, the district judge purported to review that decision solely to determine whether it was "clearly erroneous or contrary to law." *See Doe*, 596 F.3d at 1041 n.4 (applying 28 U.S.C. 636(b)(1)(A)). The panel, in turn, purported to review the district judge's decision

---

[8]Notably, the district judge never held that the defendant schools in this case would be prejudiced by an inability to wage a full campaign in the media, and the magistrate judge explicitly rejected that argument. *See supra* note 4. Thus, in our haste to extend deference to the trial judge, we have affirmed him (and given life to a troubling legal principle) on the basis of arguments that he did not even make and which the magistrate judge rejected outright. The damage caused by our eager, uncritical deference in this case will almost certainly extend well beyond the parties before us, giving district judges in future cases broad and unreviewable license to deny Doe status for the most insubstantial of reasons, or for no reason at all.

solely for abuse of discretion. This double deference in itself may frequently leave lower courts as well as ours in a state of confusion. Here, for example, the panel directly deferred to what the magistrate judge concluded in some instances, to what the district judge found in others, and on some occasions to what neither actually concluded.[9] This is considerably different from the standards we purport to follow: review for abuse of discretion the district court's decision as to whether the magistrate's judgment was clearly erroneous or contrary to law. The difference between theory and practice regarding what decision the court of appeals should review, and under what standard we should do so, necessitates further examination. But given that such confusing double deference is presently the law of our circuit, I can only observe that the use of a highly subjective five-factor test may render the lower court's decision effectively unreviewable. As this case demonstrates, when the subject of review is a malleable five-part balancing test, district judges may hesitate to label even very

---

[9]For instance, the panel treated the district and magistrate judges' orders applying the *Advanced Textile* test as interchangeable, and was clearly confused by the task of identifying the precise conclusions that were before it for review. For example, on the issue of prejudice the panel held that, the "district court did not abuse its discretion by finding that defendants would have been hindered in their efforts to gather third-party discovery concerning standing and in defending the high-profile case in the media, if not in the courts." *Doe*, 596 F.3d at 1045 n.7. However, the district judge made no such finding—in fact, he was utterly silent on the issue of prejudice. And the magistrate judge rejected these arguments explicitly. See Order Denying Plaintiffs' Motion for Leave to Proceed Anonymously and For Related Protective Order, *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, at 15 (finding defendants "will not be prejudiced by Plaintiffs' portrayal in the media"); *id.* at 16 ("[I]t remains speculative whether anonymity will burden any third party discovery."). Further, even had it not been rejected by the magistrate judge, difficulty "defending the high-profile case in the media," surely is not a legitimate factor for a judge to consider in deciding whether to grant anonymity. That the panel affirmed the district judge on the basis of arguments that he did not make —indeed, arguments that the magistrate judge rejected outright—makes clear that such double deference generates undue complexity on review, and ought to be reconsidered by an en banc court.

troubling magistrate judge decisions "clearly erroneous," and this court, in turn, may hesitate to reverse the district court's decision when compelled to apply an "abuse of discretion" standard. The result: "no meaningful review."

I have little doubt that the unjust and unsupportable decision that the panel reached in this case, and likely the decision that our court made not to go en banc, are a result in large part of our double deference to a magistrate judge's decision applying a highly subjective and malleable five-part test. Such convoluted deference amounts, as it did here, to an abdication, rather than an exercise, of Article III review. It is unfortunate that the result is a decision by this court that is manifestly at odds with the long-standing practice of the federal courts and a forfeiture of the rights of would-be students to enforce their Constitutional claims in federal court.

## VI.

While the panel decision will in the future be of little or no consequence with respect to the rights of juveniles to anonymity, read literally it would have a substantial effect on our rules governing anonymity for adults. The panel purports to follow the five-factor test we established for Doe status in *Advanced Textile*, which calls on us to balance: "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation;" as well as (4) "the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice;" and (5) "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." 214 F.3d at 1068-69 (citations omitted). However, without any discussion or explanation, the panel changed the *Advanced Textile* rule, and imposed upon litigants for the first time a disqualifying threshold showing: "*In order to proceed anonymously*, a plaintiff *must* show *both* (1) a fear of *severe* harm, *and* (2) that the fear of *severe* harm

is reasonable." *Doe*, 596 F.3d at 1043 (emphasis of "and" in original). It is difficult to believe that the panel intended that change, for if it did, one would have thought it would have announced that it was modifying the test instead of stating that it was simply applying the existing rule.

The panel's requirement of reasonable fear of *severe* harm as a *sine qua non* for allowing plaintiffs to seek Doe status is contrary to the *Advanced Textile* test. That test sought to balance the "party's need for anonymity [against] prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068. It made clear that, along with "the reasonableness of the anonymous party's fears" and "the anonymous party's vulnerability to . . . retaliation," the severity of the feared harm was but one of three factors to be considered in support of anonymity, and the degree of severity was just that: a question of degree. *Id. Advanced Textile* did not identify any of the three factors supporting anonymity as an absolute prerequisite, and the balancing test did not require that a fear of *severe* harm be shown at all if the other factors supporting anonymity were sufficient to outweigh prejudice to the opposing party and the public's interest in disclosure of the litigant's identity. By making a reasonable fear of *severe* harm an absolute threshold requirement for a grant of Doe status, the panel leaves the law in a state of confusion, creating a clear conflict between the *Advanced Textile* test that it purported to apply and the test that it actually applied. It also empowers magistrate and district judges to deny adult litigants anonymity on the basis of the most pretextual countervailing concerns, or in some instances, without any countervailing concerns at all.

## VII.

It is fortunate that, due to the existence of Rule 5.2(a), and the panel's failure to consider that rule, the opinion this court has declined to hear en banc, and its predecessor *Advanced Textile*, will have no effect on future juvenile litigants. But for

that, it would impose on minors an onerous burden that few
of them could meet. Still, the future inapplicability to juve-
niles is of little solace to the plaintiffs in this case, or to adult
litigants who may in the future be deserving of anonymity but
may be denied it due to the many harmful propositions that
this opinion affirms, including the introduction of the unprec-
edented threshold test for Doe status. Perhaps in one respect,
however, future adult litigants will be fortunate in at least
some cases. Perhaps, upon further reflection, we will be more
willing to reverse when a district judge abuses his discretion.
The abuse of discretion standard is deferential; but when, as
here, a district judge clearly abuses that discretion, future pan-
els may not be as neglectful of their duty to recognize that
abuse and to undertake meaningful review. In such cases at
least, the amorphous "abuse of discretion" standard which
serves the judicial system well as an abstract proposition will
be applied in a manner that truly implements the purposes and
objectives which it was intended to serve.

     I dissent.

                    * * * * * * * * *

              Response to Concurrence in the Order

     Having reviewed this dissent and finally awakened to the
relevance of Rule 5.2(a), the panel defends its position, first
by suggesting that the Rule was not designed to provide ano-
nymity for minors, but rather only "veiled identification." *See
Concurrence from Denial of Rehearing En Banc* at 18396.
The panel should be embarrassed to make this argument.
Either the rule is designed to protect the identity of minors or
it is not. The answer is clearly the former, although where it
may not fully serve that purpose Doe status remains available.
What the rule makes clear in any event is that the identity of

juveniles should be protected by the courts under most circumstances.[10]

The panel also speculates, with no proof in the record, that plaintiffs did not invoke Rule 5.2(a) because they would turn 18 before the litigation ended. *Id.* It is unlikely, however, that plaintiffs filing a suit seeking *admission* to high school were old enough to have almost graduated from school. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656-57 (9th Cir. 2002) (students do not have standing to sue a school that they cannot apply to in the future). In a futile attempt to refute this argument, the panel's concurrence would make new law by declaring *ex cathedra* that Rule 5.2(a)'s protections end the moment a plaintiff turns 18. *Concurrence to Denial of Rehearing En Banc* at 18396. The panel has no support for this gratuitous pronouncement, which is probably wrong. After all, we do not publicly release juvenile records once a minor offender becomes an adult, *see, e.g.*, 18 U.S.C. § 5038(a), and nothing in Rule 5.2(a) indicates that the rule should be any different for court filings made by a minor.

The panel also cites to a litany of cases involving individuals over the age of 18, or cases from long before the adoption of Rule 5.2(a) or the use of Does in general, to support the proposition that the most important civil rights cases involv-

---

[10]The majority appears to believe that the rule's purpose will be satisfied even if some of the young plaintiffs' initials are sufficiently uncommon that their identities will be discernible, while the identities of other young plaintiffs in the same suit will not be revealed because there are a fair number of minors who have those same initials.

The majority's assertion that the plaintiffs' initials "will effectively reveal their identities" is equally nonsensical. Aside from rendering the rule without purpose, the assertion is wholly incorrect factually. There are more than 50,000 non-native, high-school-age children in Hawaii, *see* Office of Hawaiian Affairs, Native Hawaiian Data Book 56 (2006), so revealing the plaintiffs' initials will not, as the panel claims, "effectively reveal their identities," except in the most unusual circumstances. *Concurrence to Denial of Rehearing En Banc* at 18396.

ing juveniles, especially in the fields of education and Hawaiian entitlements, the minors used their real names.[11] *See id.* at 18397-99. It does so in an attempt to show that juvenile litigants including those in this case need have no concern about divulging their identities. Congress clearly did not agree with this view when it adopted Rule 5.2(a), nor is the panel's view remotely consistent with the facts of this case.

Finally, the panel assumes that had the district judge been aware that minors are afforded special protection by Rule 5.2(a), he should have still required the plaintiffs to divulge their identities under the clause allowing the district judge to make an exception to the Rule. *Id.* at 3. But unless Congress's desire to ensure privacy for juvenile litigants is without any meaning, the panel cannot assume that the district judge would have made such an exception after learning about the existence of the Rule. At the very least, the panel would be required to remand the question to the district court so that it could decide whether to do so after considering the Rule, with its provision of anonymity to juvenile litigants.

I dissent.

---

BEEZER, GRABER, and FISHER, Circuit Judges, concurring in the denial of rehearing en banc:

We believe that the panel's unanimous decision affirming the district court was sufficient, in its own right, to justify denying a rehearing en banc. However, we write separately,

---

[11]Of the numerous cases the panel cites, only two, *Lee v. Weisman*, 505 U.S. 577 (1992), and *Mohica-Cummings v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, No. 03-cv-00441 (D. Haw. dismissed 2003), involved minor litigants bringing suit in the post-1970s era, when courts have liberally allowed litigants to use Doe status. *See* Wendy M. Rosenberger, Note, *Anonymity in Civil Litigation: The "Doe" Plaintiff*, 57 NOTRE DAME L. REV. 580, 580 (1982).

concurring in that denial, to respond to the dissent to the denial of rehearing en banc.

## I

The dissent argues that we erred by failing to consider Federal Rule of Civil Procedure 5.2(a). Dissent at 18383-84. Rule 5.2 is entitled "Privacy Protection for Filings Made with the Court" and subsection (a) states the following:

> Redacted Filings. *Unless the court orders otherwise,* in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the *name of an individual known to be a minor,* or a financial-account number, a party or nonparty making the filing may include only:
>
>> (1) the last four digits of the social-security number and taxpayer-identification number;
>>
>> (2) the year of the individual's birth;
>>
>> (3) *the minor's initials*; and
>>
>> (4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2(a) (emphasis added).

The dissent correctly states that "[n]either the magistrate judge, nor the district judge, even mentioned, let alone considered, Rule 5.2(a) when denying the plaintiffs' request for anonymity; nor did the panel when reviewing the denial." Dissent at 18381. We point out, first, that neither party brought it up before the magistrate judge, the district judge, or in their respective briefs before this court. *See O'Guinn v. Lovelock*

*Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007) (holding that arguments not raised before the district court generally are waived); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (holding that arguments not raised in a party's opening brief generally are waived).

Second, a plain reading of the text reveals why the plaintiffs may have chosen not to invoke this rule. Rule 5.2(a) permits minors to proceed with their initials, not as "Doe" or otherwise anonymously. There are only so many potential litigants in this suit; to reveal their initials might, for many, effectively reveal their identities. Therefore, the only relief that Rule 5.2(a) could have provided to the plaintiffs apparently did not interest them. The plaintiffs sought anonymity, not veiled identification.

Additionally, it is possible that some of the plaintiffs were 16 or 17 years old, meaning that they would have turned 18 years old before the litigation concluded. Because Rule 5.2(a) would not have protected them after their 18th birthdays, this may be another reason why the plaintiffs did not invoke the rule.

If the plaintiffs had made a Rule 5.2(a) claim, they may have been able to proceed with only their initials appearing. But we also note that nothing in the rule *mandates* veiled identity for minors. The statute gives the district judge discretionary power to permit the use of a minor's initials; it does not mandate a particular result. *See* Rule 5.2(a) (holding that minors "may" use their initials "[u]nless the court orders otherwise").

In either case, Rule 5.2(a) in no way undermines our opinion. On the contrary, it reinforces our belief that courts generally should remain open: Congress could have written Rule 5.2(a) to allow child litigants to proceed as Does or otherwise anonymously, but it did not.

## II

Setting aside the Rule 5.2(a) argument, the dissent presents us with a rather Faustian choice between anonymity and civil rights litigation on one side, and disclosure and violence on the other. But, as the discussion below will show, this is a false choice.

To begin, the dissent asserts that disclosure in cases like these would put would-be plaintiffs' "physical and mental well-being at risk," Dissent at 18377, thereby discouraging civil rights litigation. The panel did not take lightly the possibility that civil rights litigation may be chilled by disclosure. But the test that we apply today has been around since 2000, *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000), with no apparent effect on civil rights litigation. In fact, historically, the most important civil rights cases involving juveniles have all been cases where the plaintiffs used their real names, rather than pseudonyms. This is especially true in the context of education generally,[1] and of

---

[1] *See, e.g., Grutter v. Bollinger*, 539 U.S. 306 (2003) (challenge to affirmative action scheme at public law school); *Gratz v. Bollinger*, 539 U.S. 244 (2003) (challenge to affirmative action scheme at public university); *Meredith v. Fair*, 298 F.2d 696 (5th Cir. 1962) (challenge to racial segregation at public university).

Juvenile civil rights plaintiffs have also proceeded under their own names in the education context. *See, e.g., Lee v. Weisman*, 505 U.S. 577 (1992) (constitutional challenge to recital of prayer at public school graduation ceremony); *Runyon v. McCrary*, 427 U.S. 160 (1976) (section 1981 challenge to whites-only admission policies of two private schools in Virginia); *Lau v. Nichols*, 414 U.S. 563 (1974) (challenge to public school system's failure to provide English language instruction to students of Chinese ancestry); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963) (constitutional challenge to recitation of Bible verse and prayer in public school); *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) (challenge to segregation in public schools); *Minersville Sch. Dist. v. Gobitis*, 310 U.S. 586 (1940) (constitutional challenge to mandatory recital of pledge of allegiance in public school).

cases that have challenged Hawaiian entitlements particularly.[2] The history of civil rights litigation before and after the *Advanced Textile* test demonstrates that there is no risk that our decision will chill future litigation.

The dissent also believes that disclosure would place these litigants in particular at great risk. Here the dissent simply disagrees with the district judge's factual finding that the Doe children do not reasonably fear severe harm. Taking the internet postings at face value, the dissent would have us fear for the children's lives if the suit were to move forward without anonymity. But, as we explained in our opinion, a fair reading of the record reveals that the district court's factual finding was not clearly erroneous.

Consider, for instance, that in the past students have used their real names when challenging Kamehameha's admissions processes.[3] Not only that, those students have since prevailed and enrolled in the school, with no incidents whatsoever, either in class or in public. *See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1045 (9th Cir. 2010) ("*Doe II*"); *see also* SAMUEL P. KING &

---

[2]*See, e.g.*, *Rice v. Cayetano*, 528 U.S. 495 (2000) (section 1983 challenge to Hawaiian ancestry requirement for voting for trustees of Hawaii's Office of Hawaiian Affairs); *Arakaki v. Lingle*, 477 F.3d 1048 (9th Cir. 2007) (section 1983 challenge to State of Hawaii programs restricting benefits to "native Hawaiians" or "Hawaiians"); *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003) (section 1983 challenge to provision of Hawaii Constitution creating agencies that allocate benefits to Native Hawaiians); *Arakaki v. Hawaii*, 314 F.3d 1091 (9th Cir. 2002) (section 1983 challenge to constitutional and statutory requirements that trustees of the Office of Hawaiian Affairs be citizens of Hawaiian ancestry); *Mohica-Cummings v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, No. 03-cv-00441 (D. Haw. 2003) (juvenile plaintiff challenging Kamehameha's admission policy).

[3]*See, e.g.*, *Mohica-Cummings v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, No. 03-cv-00441 (D. Haw. 2003) (juvenile plaintiff challenging Kamehameha's admission policy).

Randall W. Roth, Broken Trust: Greed, Mismanagement, & Political Manipulation at America's Largest Charitable Trust 45 (2006) (describing how Kamehameha's student body has changed drastically as "each generation of children had a lower quantum of Hawaiian blood"). Moreover, the district court weighed the comments regarding violence at Kamehameha against the plaintiffs' own statements that they did not fear "possible retaliation and ostracism at [Kamehameha Schools] if and when they are admitted." *Doe II*, 596 F.3d at 1040-41.

The district judge was able to review carefully all the evidence presented before concluding that "Plaintiffs continue to establish, at most, that they are vulnerable children who have a reasonable fear of social ostracization and negative press for their involvement in this case." Given the Plaintiffs' own statements and the history of nonviolence towards non-Hawaiian admitted students, we concluded that the district court did not clearly err.

## III

Finally, the dissent criticizes the panel for using the five-factor test that we are compelled to apply in cases like this one. Dissent at 18388. But often in complex cases where there are various competing concerns that must be weighed in tandem, only a multi-factor test will do. Here we must consider five elements: the severity of the threat; the reasonableness of the anonymous party's fear of that threat; any vulnerabilities peculiar to the anonymous party; the prejudice that anonymity would present to the opposing party; and the public interest. *Doe*, 596 F.3d at 1042. A five-factor test is therefore necessary to ensure that each of the concerns is considered in its own right.

The dissent also alleges that we are amending the *Advanced Textile* test by requiring that a plaintiff show "both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reason-

able." *Id.* at 1043. But read closely, this objection is simply a repackaged objection to our decision to analyze these factors together, an approach that is both logical and pragmatic. For instance, a plaintiff may fear extraordinary harm, but such fear should not matter if it is wholly unreasonable. *See id.* at 1044. And conversely, it should not be sufficient for a plaintiff to reasonably fear any slight harm or to seek anonymity in order "to avoid the annoyance and criticism that may attend any litigation." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Contrary to the dissent's assertion, our approach in this regard does not conflict with *Advanced Textile*. Indeed, the requirement that a plaintiff reasonably fear sufficiently "severe" harm comes straight from the *Advanced Textile* opinion, which concludes: "We hold that where, as here, the named plaintiffs . . . demonstrate that they have *an objectively reasonable fear of extraordinarily severe retaliation*, they may conceal their identities from defendants . . . ." 214 F.3d at 1063 (emphasis added). Advanced Textile asks whether " 'a reasonable person would believe that the threat might actually be carried out.' " *Doe*, 596 F.3d at 1044 (quoting *Advanced Textile*, 214 F.3d at 1071). Other circuits require even more. *See, e.g.*, *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (per curiam) (requiring "real danger of physical harm").

The dissent would boil the test down to one factor: the vulnerability of juveniles. Dissent at 18385-86. But treating the age of the plaintiff as an *overriding* factor is not what our precedent requires. As we wrote, the vulnerability factor is certainly one that weighs in favor of anonymity, but it is still only one factor—not the *only* factor. *Accord Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("Again, we do not mean to imply that all civil rights suits mounted in the name of children may be prosecuted anonymously. Rather, we view the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity here.").

Finally, we disagree that denying anonymity to child plaintiffs is "out-of-step" with the other circuits, Dissent at 18378,

and the "universal practice of the American court system," Dissent at 18387. The dissent's assertion begs the question: what is the "universal practice"? *Stegall* is the only circuit case to conclude that a district court erred in denying Doe status to child plaintiffs, and the court there went to great lengths to point out how exceptional its grant of anonymity truly was. Furthermore, that court's mention of a "universal practice" is contrary to the dissent's view: "We conclude that the *almost universal practice of disclosure* must give way in this case to the privacy interests at stake." *Stegall*, 653 F.2d at 186 (emphasis added).

Motions to proceed anonymously have been litigated rarely, especially at the appellate level. This is the first published Ninth Circuit case to reach the question of a plaintiff's motion to proceed anonymously since *Advanced Textile* was decided ten years ago.[4] Far from providing support to the dissent's argument, its citations to case law and statutes merely show that some child plaintiffs have been granted Doe status, some legislation provides for Doe status, and some district courts have used their discretion to grant Doe status. But overall it is clear that there remains a presumption against anonymity.

---

[4]There were two unpublished decisions. *See Fernandez v. Nevada*, 361 F. App'x 859, 859 (9th Cir. 2010) (holding the district court did not abuse its discretion in denying anonymity); *Doe v. Bergstrom*, 315 F. App'x 656, 656-57 (9th Cir. 2009) (same).